# IN THE COURT OF APPEALS OF IOWA

No. 23-1876
Filed October 30, 2024

**ISAIH CHRISTOPHER FANKHAUSER,**
        Petitioner-Appellant,

**vs.**

**ANNELIESE KISTLER,**
        Respondent-Appellee.
_____

        Appeal from the Iowa District Court for Polk County, David Porter, Judge.


        A father appeals the district court's order granting the mother physical care of their child. **AFFIRMED.**


        Danni J. Harris-Avery and Sydnee M. Waggoner of Whitfield & Eddy, P.L.C., Des Moines, for appellant.

        Lisa Noble (until withdrawal) of Family Law Solutions of Iowa LLC, Des Moines, and Jordan Weets (until withdrawal) of Law Offices of Robert S. Gitmeid & Assoc., New York, New York, for appellee.

        Anneliese Kistler, West Des Moines, self-represented appellee.


        Considered by Tabor, C.J., and Chicchelly and Sandy, JJ.

**SANDY, Judge.**

Isaih Fankhauser, the father of A.K.F., born in 2022, appeals the district court's order setting custody, visitation, and support relating to the child. He asserts that the district court erred in awarding primary physical care of the child to the mother, Anneliese Kistler. Fankhauser argues the physical care provisions of the order do not serve the best interest of the child and that he should be awarded physical care of the child. We affirm the district court's order granting Kistler physical care.

## I. Background Facts and Proceedings

Fankhauser and Kistler met in spring 2021 while working at Jordan Creek Mall. They moved in together soon after. Kistler learned she was pregnant in December and gave birth to the child in August 2022. Following birth Kistler served as the child's "primary caretaker," although Fankhauser took part in some of the child's care as well, such as changing her diapers, feeding, and bathing her.

Testimony was presented indicating that Fankhauser has used LSD, Kistler has used cocaine, and both parties abused alcohol and marijuana. Soon, tension formed between the parties due to Kistler's belief that Fankhauser was cheating on her. The parties broke up and Fankhauser eventually moved into his parents' home in the late summer of 2022.

Kistler experienced issues with depression during pregnancy that have increased since the child's birth. She has been diagnosed with postpartum depression. Fankhauser testified to struggling with mental-health issues and has been diagnosed with depression. In the past he struggled with suicidal thoughts and would sometimes sleep for up to sixteen hours in a day, according to Kistler.

Kistler also testified that she "had to stop many suicide attempts," but Fankhauser claimed he has never acted on any suicidal ideation. He still struggles with his depression but has developed coping skills. He also has other medical issues and is diagnosed with Trichorhinophalangeal Syndrome, which causes bone and joint malformations, distinctive facial features, intellectual disability, and abnormalities of the skin, hair, teeth, sweat glands, and nails. Due in part to such diagnosis, as well as his work schedule, Fankhauser's mother often provided care to the child.

The parties have attempted a joint-physical-care arrangement, but Kistler says Fankhauser did not attend co-parent therapy. Fankhauser claimed he wanted to avoid Kistler because her behavior had become volatile during custody exchanges. In August 2022, it was reported to the Iowa Department of Health and Human Services (DHHS) that Fankhauser had become intoxicated to the level of alcohol poisoning while in custody of the child. The investigation found that the report was unfounded. Fankhauser testified that the child was not in his care that night and that he had not suffered alcohol poisoning, but Kistler testified they were present with the child together.

Fankhauser filed his custody petition in August 2022. The next month Kistler claimed she became extremely ill and was bedridden for three weeks. Fankhauser cared for the child full-time. He took custody of the child on September 3. From September 3 to September 18, Kistler had limited if no communication with Fankhauser. On September 18, Kistler texted Fankhauser to ask about resuming the regular parenting schedule. Fankhauser refused and claimed he believed Kistler had abandoned the child due to her failure to check in during the period she was sick. He withheld Kistler's visitation from September 18

until October 24. Fankhauser sporadically communicated with Kistler during that time.

Fankhauser filed for a temporary hearing in October, and the parties stipulated to temporary matters on November 14. Kistler claimed she only signed the temporary matters stipulation so that she could restore her visits with the child.

On November 7, 2022, a second report was made to DHHS against Fankhauser. Kistler alleged that Fankhauser sexually assaulted the child. The child was subjected to a vaginal examination as part of the investigation. Kistler alleged that Fankhauser sexually assaulted the child because he is "promiscuous." The report was investigated by the police department of Nevada as well as DHHS, and was ultimately concluded to be unfounded. No charges were filed.

Trial was held May 4 to May 5, 2023. On May 5, the district court awarded the parties joint legal custody and ordered that Kistler have a mental health evaluation conducted. The proposed exhibit containing that evaluation was never admitted by the court, and on November 15, 2023, the court entered its written order awarding Kistler physical care of the child. Fankhauser now appeals.

## II. Standard of Review

We review custody and physical care appeals de novo. *In re Marriage of Hansen*, 733 N.W.2d 683, 690 (Iowa 2007). The district court's factual findings are given weight, "especially to the extent credibility determinations are involved." *Id.*

## III. Discussion

Fankhauser argues the district court erred in awarding physical care of the child to Kistler. He requests that physical care be awarded to him.

We resolve physical care disputes based on the result that is in the best interest of the child rather than what the parents perceive to be fair to them. *Id.* at 695. In establishing an appropriate custody award, we are guided by three statutory provisions.

First, Iowa Code section 598.41(1)(a) (2022) requires the district court to establish a custody award that will, in part, ensure the child has the maximum opportunity for continuing physical and emotional contact with both parents. Second, Iowa Code section 598.41(1)(c) requires the district court to consider the denial by one parent of the children's opportunity for maximum continuing contact with the other parent. Third, Iowa Code section 598.41(3) sets forth factors the district court may consider in determining what custody arrangement is in the best interest of the children. Among those factors are whether the parents can communicate with each other regarding the children's needs, and whether each parent can support the other parent's relationship with the children. *Id.* In choosing which caregiver should be awarded physical care of children, the factors of continuity, stability, and approximation are entitled to considerable weight. *Hansen*, 733 N.W.2d at 696–97.

In terms of continuity, we consider which parent has historically been the primary caretaker. *In re Marriage of Roberts*, 545 N.W.2d 340, 343 (Iowa Ct. App. 1996). Continuity is closely related to approximation—in which we consider "the proportion of time each parent spent performing caretaking functions for the child prior to the parents' separation." *Hansen*, 733 N.W.2d at 697. "We continue to believe that stability and continuity of caregiving are important factors that must be considered in custody and care decisions." *Id.* at 696.

But we also consider "the denial by one parent of the child's opportunity for maximum continuing contact with the other parent, without just cause, a significant factor in determining the proper custody arrangement." *Id.* at 700. Denial by one parent of another parent's access to the child speaks the ability of the parents to "communicate and show mutual respect." *Id.* at 698.

There is no dispute here that joint physical care is not appropriate. Neither parent requested it. And even if one party had, the district court succinctly and accurately summarized the level of conflict between the parties that makes joint physical care inappropriate:

> [Fankhauser] continues to struggle mightily in embracing all the obligations that come with fatherhood. But for his parents, [Fankauser] would be wholly incapable of caring for [the child]. As for [Kistler], it is patently obvious she has not moved past [Fankhauser]'s purported infidelity and the parties' ultimate separation in July 2022. It would appear, [Kistler] is bound and determined to exact her revenge, no matter the cost. This Court is deeply concerned that [Kistler] will use the minor child as a means to that end. In short, the Court is thoroughly underwhelmed with both parties' ability to co-parent, for different reasons.

Fankhauser argues that awarding physical care to Kistler is inappropriate because Kistler has acted as the *main* impediment to the co-parenting relationship. We disagree. It is true that Kistler has actively used the child as "leverage" to level retribution and accusations against Fankhauser. She has also sent harassing text messages and still questions him about seemingly innocuous interactions with other women. And her false report of sexual abuse is inexcusable. But both parties have exercised failures to co-parent, such as their inability to successfully use a parenting app, which displays an inability for the parties to engage in basic co-parenting functions. Although Kistler's communication was not perfect, the

district court implicitly found that Kistler had a better record of communication than did Fankhauser and that she would be the better communicator going forward. We give deference to this finding because the district court was in a better position to evaluate the evidence and testimony presented. The record available for our review does not contradict such finding.

The district court found that Fankhauser withheld visitation from Kistler when he had no right to do so. He did not file an emergency motion during the period he withheld the child and still asserts that he did nothing wrong.[1] The district court found this failure to take responsibility revealed no willingness to change his co-parenting philosophy going forward. Most concerningly, Fankhauser repeatedly failed to effectively communicate with Kistler while the child was in his primary care. Despite her other shortcomings, the issue of co-parenting ability weighs in Kistler's favor.

Fankhauser also challenges the district court's assessment that he is "wholly incapable" of caring for the child. He argues the district court penalized him for having a "strong support system." This is not the case. The district court said that, "But for his parents, Petitioner would be wholly incapable of caring for [the child]."

---

[1] Even assuming that Kistler had gone AWOL and simply "flaked" out with no justifiable excuse, such period was for essentially one visitation period Kistler would have otherwise been entitled to—and she shortly thereafter started communicating with Fankhauser again. While it is concerning that she seemingly cut off all inquiry or interest relative to the child during that period, such failure was not a basis to withhold visits until well into October on terms only agreeable to Fankhauser. Whether Fankhauser used that event as a bargaining chip to his advantage or out of genuine concern of his child; such finding was not explicitly made by the district court. But what is clear is that the district court disapproved of the action.

The district court's finding that Fankhauser depends on his parents for the child's care revolved around his mental-health struggles. The district court cited Fankhauser's struggles in maintaining his mental health. There are periods where he slept for most of the day for multiple days. And while he cited his coping methods, Fankhauser still struggles with suicidal ideations. While it's unclear the extent to which he has ever acted on such ideations, both parties admit the ideations have caused him problems, and he is still struggling with them. His assertion that "stress" and feeling "overwhelmed" lead to these ongoing ideations impedes Fankhauser's ability to parent, particularly when considering his many other parenting shortcomings.

The district court found that "the choices are between an absentee parent and a bad one." We do not disagree with that assessment. Whether Fankhauser was absentee because of his past drug use, because of his depression, because of his disease, or because of his work schedule is of no consequence. He was absentee. And the label of physical caregiver following the temporary hearing does not change that. Despite our holding, Fankhauser still enjoys joint legal custody and regular visitation. But the child's best interest is served by awarding physical care to her mother. We accordingly affirm the district court's order awarding Kistler physical care of the child.

**AFFIRMED.**